## Bolich v. Continental Assurance Co. et al.

*Robert E. Slota*, for plaintiff.
*Timothy B. Barnard*, for defendant.
*John R. Dunmire*, for additional defendant.

HONEYMAN, *J.*, August 28, 1974—Plaintiff, policy holder, instituted this action in equity praying that the court would order the defendant insurance company to account to plaintiff with respect to his life insurance policy by removing charges emanating from a purported $10,000. loan against the policy. In his complaint, plaintiff alleges that the loan was charged against the policy without his permission and without any application having been made therefor by plaintiff or anyone acting on his behalf.

Defendant insurance company filed an answer denying that payment on the $10,000. loan was issued to plaintiff without application. Defendant joined as an additional defendant The Fidelity Bank, and, in its complaint, alleged that the bank negotiated the check, crediting funds from plaintiff's policy to an account maintained by one Rhoda

Stern, and that this action was contrary to the provisions of the Uniform Commercial Code, and thus the bank was solely, or at least, jointly liable to plaintiff.

The additional defendant filed an answer denying that the negotiation and crediting of the check was contrary to the provisions of the Uniform Commercial Code, and alleged in new matter that the negligent handling by defendant of either the loan application or the check representing the proceeds, or both, gave rise to the cause of action alleged in plaintiff's complaint. In its reply to new matter, defendant denied the negligent handling of either the loan application or of the loan proceeds check.

The additional defendant attempted to join Rhoda Stern, a/k/a Mrs. Norman Bricker, as another additional defendant, but service could not be made on her.

Trial was held and all briefs have been filed with the undersigned chancellor who tried the matter. Therefore, the following adjudication of the issues is entered:

## FINDINGS OF FACT

1. Plaintiff is an individual residing at 501 Righters Mill Road, Penn Valley, Narberth, Montgomery County, Pa. and is 75 years of age.

2. Defendant is an insurance company (hereinafter company), registered to do business in this state, with offices in Bala Cynwyd.

3. Additional defendant is a bank (hereinafter bank), engaged in the business of banking in this state, with offices in Philadelphia and suburban counties, including this county.

4. On or about January of 1971, plaintiff was the

owner of a paid-up life insurance policy on his own life issued by defendant company and this policy carried a face value of $38,000.

5. On or about January 29, 1971, defendant company charged plaintiff's policy with a loan of $10,000. and has, since that date, charged plaintiff with interest on the alleged loan.

6. No loan application was ever made by plaintiff. However, a request for a $10,000. loan against plaintiff's policy was received by an employe of defendant company in its Bala Cynwyd office via telephone on January 26, 1971. This application was processed by the company without any verification nor pursuant to a signed application by defendant.

7. A check for $10,000. to the order of J. Edward Bolich of Righters Mill Rd., Penn Valley, Narberth, Pa. was mailed to a Jay Edward Bolich of 501 Righters Rd., Narberth, Pa. on or about February 2, 1971.

8. The check was never received by plaintiff. The endorsement in the name of plaintiff was a forgery. The check was negotiated by defendant bank some time on February 2, 1971, and the proceeds were credited to an account maintained by Rhoda Stern.

9. The banking transaction in the name of Rhoda Stern took place at a branch office of the bank in the Northeast section of Philadelphia, many miles from the home of plaintiff. The plaintiff never knew anyone named Rhoda Stern.

10. Plaintiff contacted defendant company on numerous occasions advising the company of the fact that the alleged loan was not made by plaintiff nor the proceeds received by plaintiff. Plaintiff had become aware that his policy had the $10,000. loan

charged against it some time in June of 1971, when plaintiff received notice from defendant company to that effect. Plaintiff signed an affidavit of forgery on June 8, 1971.

11. Company, in the alternative, asserts that plaintiff either made the loan application and received the loan proceeds or else was in some form of conspiracy with the forger; further, in the alternative, company charges bank with actionable conduct.

## DISCUSSION

Plaintiff brought this action in equity in order to remove a loan against his life insurance policy and contends that the loan was obtained without his permission and that the check representing the loan was endorsed by someone other than himself. Defendant company contends that the loan and check were properly requested and forwarded to plaintiff and should remain as a lien against plaintiff's policy. Defendant company also contends that defendant bank which negotiated the check did so in contravention of the Uniform Commercial Code. On the other hand, the bank claims that the company's handling of the loan and/or the check gave rise to plaintiff's complaint. The chancellor agrees with plaintiff and with the bank.

In examining the testimony of plaintiff, the chancellor stands convinced of his veracity. Plaintiff claims that he never made an application and no application signed by plaintiff was produced by the company. The only evidence offered by the company linking plaintiff and a loan application was an internal file memo to the effect that some-

one calling himself J. Edward Bolich had telephoned the company with a request for a $10,000. loan on plaintiff's policy. The company failed to produce either of its employes participating in the transaction, viz, Mary Dumont or Debbie Hassel. As a result, the chancellor concludes that the company acted on the basis of an unverified oral request in processing the loan application.

Plaintiff further claimed that he never received any loan proceeds check evidencing the loan. The only evidence introduced which could possibly refute plaintiff's assertion is a carbon copy of a letter from the company's file addressed to a Mr. Jay Edward Bolich of 510 Righters Road, Narberth, Pa. This letter claims on its face that it has the loan check enclosed. Plaintiff testified that the "J" in his name stands for "John" and not for "Jay," and that he never received the original of this letter or the check. In addition, the local postmaster testified that there is no "Righters Road" in Narberth. The chancellor assumes that the envelope bearing this letter bore the same address as the letter, and, as a result of the above, is unconvinced that this envelope ever reached plaintiff. Clearly, then, plaintiff is entitled to the relief that he seeks and the chancellor finds that he is entitled to relief against the company.

The foregoing facts establish negligence on the part of the company which substantially contributed to the negotiation of the check based on the forged signature on the check. The company is precluded from asserting the forged signature against the bank who paid the check in good faith and in accordance with the reasonable commercial standards of the banking business. See Uniform Com-

mercial Code, Act of April 6, 1953, P.L. 3, sec. 3-406, re-enacted by Act of October 2, 1959, P.L. 1023, 12 Pa. C.S.A. §3-406. The comment to this section provides in part that:

"No attempt is made to define negligence which will contribute to an alteration. The question is left to the court or the jury upon the circumstances of the particular cases."

It is inconceivable that plaintiff would be required to show how the check passed into the hands of the forger as contended by the company. Once plaintiff has established the negligence which facilitated the transfer and subsequent forgery of the instrument his burden is met and the company is precluded from asserting the forged signature against the bank, provided the bank followed reasonable commercial standards in negotiating the check. There is no evidence in this case that the bank did not.

In addition, defendant bank is further protected by application of the "imposter rule" enunciated in U.C.C. 3-405, 12 Pa. C.S.A. §3-405. In light of the fact that the company processed the check via an unverified phone call and of the fact that the check was mailed to a named individual at an address which was different from the name and address of the payee on the check, the chancellor concludes that the company was tricked into an issuance of the check to an imposter or his confederate in the name of the payee. The fact that the company intended to mail the check to the payee in no way changes this result. The position taken by U.C.C. 3-405, 12 Pa. C.S.A. §3-405, is that the loss, regardless of the type of fraud committed by the imposter, should fall upon the company, since the company

was the drawer of the check in this case. See Philadelphia Title Insurance Co. v. Fidelity-Philadelphia Trust Co., 419 Pa. 78 (1965).

## CONCLUSIONS OF LAW

Under the law, the facts, and the circumstances herein, the chancellor concludes that:

1. Plaintiff never made the loan application on his life insurance policy discussed herein, and never received the loan proceeds check for $10,000.

2. Plaintiff's recourse is against the company only.

3. The company negligently handled the loan application and the loan proceeds check.

4. The company was deceived by an imposter in the issuance of the loan and the loan proceeds check.

5. The bank acted in good faith and followed reasonable commercial standards for the bank's business in negotiating the check.

## DECREE NISI

And now, August 28, 1974, it is decreed that:

(a) defendant company account to plaintiff by removing the $10,000. loan against plaintiff's policy and any interest or service charges emanating from this $10,000. loan;

(b) defendant company's complaint against defendant bank is dismissed and defendant bank is without liability to plaintiff or to defendant company for issuing payment on the loan proceeds check;

(c) this decree shall become final unless exceptions are filed hereto within 20 days of this date.